(June 12, 2009)

BUFFALO TEACHERS FEDERATION, INC., NYSUT, et al., Respondents, v BUFFALO BOARD OF EDUCATION FOR CITY SCHOOL DISTRICT OF CITY OF BUFFALO et al., Appellants. (Action No. 1.) [881 NYS2d 273]—

Appeals and cross appeal from a judgment (denominated order) of the Supreme Court, Erie County (John A. Michalek, J.), entered November 14, 2007 in CPLR article 78 proceedings and a declaratory judgment action. The judgment, among other things, granted the amended petitions in proceeding Nos. 1 and 2 and granted plaintiffs' motion for summary judgment in action No. 1.

It is hereby ordered that the judgment so appealed from is unanimously affirmed without costs.

Memorandum: In light of a State Comptroller's report concerning a fiscal crisis in the City of Buffalo (City), a respondent in proceeding Nos. 1 and 2, the Legislature passed the Buffalo Fiscal Stability Authority Act (Act) on July 3, 2003 to address that fiscal crisis (*see* Public Authorities Law § 3850 *et seq.*). The Act created the Buffalo Fiscal Stability Authority (BFSA), a public benefit corporation that is a respondent in proceeding Nos. 1 and 2, to assist in achieving fiscal stability in the City by the 2006-2007 fiscal year (*see* § 3857 [1]). In particular, the BFSA was empowered to impose a wage freeze upon its finding that such freeze was essential to the adoption or maintenance of a City budget or financial plan (*see* § 3858 [2] [c] [i]).

On April 21, 2004, the BFSA invoked its power to impose a wage freeze and determined "that a wage freeze, with respect to the City and all covered Organizations, is essential to the maintenance of the Revised Financial Plan and to the adoption and maintenance of future budgets and financial plans that are in compliance with the Act." The BFSA further resolved that, effective April 21, 2004, "this shall be a freeze with respect to all wages . . . for all employees of the City [that] shall apply to prevent and prohibit any increase in wage rates." On June 1, 2007, the BFSA resolved to lift the wage freeze, effective July 1, 2007.

All of the collective bargaining agreements between the City and the petitioners in proceeding Nos. 1 and 2 and the plaintiffs

in action No. 1 contain plans or schedules for career advancement or promotion that are referred to herein as steps. As an employee acquires service credit or years of employment, he or she advances in steps and receives a concomitant increase in salary. The general purpose of the "steps" is to recognize increased experience, proficiency and mastery of particular sets of job skills or requirements. Additionally, the collective bargaining agreements contain across-the-board percentage wage increases that apply to all of the "steps" within the bargaining unit.

Upon the lifting of the wage freeze, the BFSA and the City indicated that City employees would be entitled only to a one "step" increase in salary and wages, in effect "resuming" the advancement up the steps that had been frozen in 2004. The unions, however, contended that, although the employees could not be paid the increased wages to which they would have been entitled during the wage freeze period, they nevertheless were entitled upon the lifting of the wage freeze to be moved ahead four salary "steps." In rejecting that contention, the BFSA and the City asserted that such an increase in salary "steps" would have an untenable financial impact.

The respondents in proceeding Nos. 1 and 2 and the defendants in action No. 1 appeal from a judgment denying the motions of the respondents to dismiss the amended petitions and sua sponte granting the relief requested therein, as well as granting the motion of the plaintiffs in action No. 1 for summary judgment on the amended complaint and denying the cross motions of the defendants in action No. 1 for summary judgment dismissing the amended complaint. The petitioners in proceeding No. 1 also cross-appeal from the same judgment insofar as the court "failed to determine that the [BFSA] lifted or should have lifted the wage freeze no later than January 31, 2007." Supreme Court concluded that "[p]etitioners [and plaintiffs] are entitled to their previously negotiated wage increase benefits going forward immediately . . . [inasmuch as t]o interpret [Public Authorities Law § ] 3858 (2) (c) (iii) in the manner advanced by [r]espondents [and defendants] would result in a cancellation of the wage increases which is not authorized or permitted by the statute." We affirm.

The parties agree that the resolution of these appeals and this cross appeal involves an issue of law that is dependent upon statutory construction. Our analysis thus must begin with the express language of Public Authorities Law § 3858 (2), which provides in pertinent part: "In carrying out the purposes of this title during any control period, the [BFSA]: . . . (c) may impose

a wage and/or hiring freeze: (i) During a control period, upon a finding by the [BFSA] that a wage and/or hiring freeze is essential to the adoption or maintenance of a city budget or a financial plan that is in compliance with this title, the [BFSA] shall be empowered to order that all increases in salary or wages of employees of the city and employees of covered organizations . . . are suspended. Such order may also provide that all increased payments for . . . salary adjustments according to plan and step-ups or increments for employees of the city and employees of covered organizations . . . are, in the same manner, suspended . . . (iii) Notwithstanding the provisions of subparagraphs (i) and (ii) of this paragraph, no retroactive pay adjustments of any kind shall accrue or be deemed to accrue during the period of wage freeze, and no such additional amounts shall be paid at the time a wage freeze is lifted, or at any time thereafter."

Public Authorities Law § 3858 (2) (d) provides that the BFSA: "shall periodically evaluate the suspension of salary or wage increases or suspensions of other increased payments or benefits, and may, if it finds that the fiscal crisis, in the sole judgment of the [BFSA] has abated, terminate such suspensions."

We conclude that, pursuant to the plain meaning of the express language of Public Authorities Law § 3858, the contractual provision concerning the employees' ongoing advancement on the salary schedules as a result of continued accrual of service credit was not cancelled, annulled or eliminated.

Rather, the City's obligation to make *payment* of the type of wage increases in question was suspended until the wage freeze was terminated. The City cannot ignore the fact that the employees have continued to accrue service credit and have climbed the ladder of salary and career increments set forth in the collective bargaining agreements.

We reject the contention of petitioners in proceeding No. 1 that the partial lifting of the wage freeze on January 31, 2007 with respect to the International Union of Operating Engineers, Local 409 (Local 409), should have applied to all unions. The new collective bargaining agreement between the Buffalo City School District and Local 409 providing for the lifting of the wage freeze was properly approved and certified by the BFSA "as an exception to the BFSA Wage Freeze Resolution" inasmuch as it constituted "an acceptable and appropriate contribution towards alleviating the fiscal crisis of the City" (*see* Public Authorities Law § 3858 [2] [c] [ii]). Such certification was specific to the new collective bargaining agreement reached

with Local 409 and did not inure to the benefit of other bargaining units or lift the wage freeze in its entirety. Present— Martoche, J.P., Centra, Carni and Gorski, JJ.